```
UNITED STATES DISTRICT COURT            FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK            ONLY
----------------------------------------------------------------- X
VICTOR QUAN,                            :
                                        :
                            Petitioner, :
                                        :               MEMORANDUM
                                        :               AND ORDER
        - against -                     :
                                        :
RICHARD POTTER, Superintendent,         :               06 CV 4841 (JG)
Great Meadow Correctional Facility      :
                                        :
                            Respondent. :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    VICTOR QUAN
        04A2564
        Upstate Correctional Fac.
        P.O. Box 2001
        Malone, NY 12953
        Petitioner, *Pro se*

    RICHARD A. BROWN
        District Attorney
        Queens County
        125-01 Queens Boulevard
        Kew Gardens, NY 11415
    By:    John M. Castellano
        Nicoletta J. Caferri
        Karen Wigle Weiss
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Victor Quan, a prisoner incarcerated in the Upstate Correctional Facility pursuant to a judgment of the New York State Supreme Court, Queens County, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Quan challenges his conviction following a jury trial of one count of burglary in the second degree, in violation of N.Y. Penal Law § 140.25. He seeks

habeas relief on eleven grounds discussed below. For the reasons set forth below, I deny the petition.

BACKGROUND

A.  *The Offense Conduct*

The government's evidence at trial established that sometime between July 13, 2001 and July 15, 2001, Quan burglarized Sharif Eladawy's Bayside, Queens apartment while Eladawy and his wife were out of town for the weekend. Before the Eladawys left the apartment, the doors were locked, the windows were closed, and the lights were off. But when they returned, their apartment had been ransacked: The entry doors and windows were open, the lights were on, drawers were pulled out of the dressers, the mattress was flipped over, and a plastic container for loose change had been capsized. A laptop computer and Eladawy's wife's jewelry were nowhere to be found. Eladawy called the police immediately.

When the police responded to Eladawy's 911 call, the officers dusted the house for fingerprints, finding one on the overturned plastic coin box. The Eladawys had purchased the plastic box at Staples five to six years before the burglary. Fingerprint experts examined and compared the print to those on the Statewide Automated Fingerprint Identification System. They matched the print to the right-hand pinky fingerprint of Victor Bernard, another name used by petitioner. Quan was arrested on October 18, 2002. Eladawy had never met Quan, nor had he given Quan permission to enter the apartment.

B.  *The Procedural History*

    1.  <u>The Trial Court Proceedings</u>

Quan was charged in an indictment with one count of burglary in the second degree and one count of petit larceny. On April 28, 2004, the jury found Quan guilty of the

burglary count and not guilty of petit larceny. Quan was sentenced as a persistent violent felony offender in light of two prior felonies: one on December 9, 1993 for second-degree robbery, and the second on November 24, 1982 for attempted assault in the first degree. He was sentenced to an indeterminate term of 18 years to life in prison as a persistent violent felony offender.

2. The Direct Appeal

On appeal to the Appellate Division, Second Department, Quan argued that the prosecution's evidence did not prove his guilt beyond a reasonable doubt and that the jury's verdict was not supported by the weight of the evidence. He also argued that certain comments in the prosecution's summation deprived him of a fair trial and that the sentencing court's persistent violent offender adjudication violated *Apprendi v. New Jersey,* 530 U.S. 466 (2000). On February 7, 2006, the Appellate Division affirmed the convictions, holding that the evidence was legally sufficient to establish Quan's guilt beyond a reasonable doubt and that the verdict was supported by the weight of the evidence. *People v. Quan*, 809 N.Y.S.2d 914 (App. Div. 2006). Citing the contemporaneous objection provision in N.Y. Crim. Proc. Law 470.05[2], the appellate court declined to review the other claims because Quan had failed to preserve those issues for appellate review. *Id.* at 914. Quan sought leave to appeal, and the New York Court of Appeals denied that application on April 26, 2006. *People v. Quan*, 6 N.Y.3d 837 (2006) (Kaye, J.).

3. The State Post-Conviction Motion

On July 16, 2004, Quan filed a *pro se* motion in the New York Supreme Court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Quan raised the following eight claims: (1) the evidence presented to the grand jury was legally insufficient; (2) defense counsel had provided ineffective assistance at trial; (3) the trial evidence was legally

3

insufficient; (4) the trial court erred by failing to dismiss the burglary charge; (5) the jury's verdict was based on matters not entered into evidence; (6) the trial court erred by failing to instruct the jury about circumstantial evidence; (7) the prosecutor improperly revealed Quan's alias to the jury; and (8) the cumulative effect of all of the alleged errors deprived Quan of a fair trial. On November 9, 2004, the trial court denied Quan's § 440 motion under N.Y. Crim. Proc. Law § 440.10(2)(b) because all of his claims had appeared on the record and could be raised on Quan's direct appeal, which was not yet perfected at the time. Quan's application for leave to appeal from the denial of his § 440 motion to the Appellate Division was denied.

4. The Instant Petition

In the instant petition, dated August 29, 2006, Quan seeks relief on the following grounds: (1) the evidence presented at trial did not establish his guilt beyond a reasonable doubt; (2) he was deprived of a fair trial due to an allegedly burden shifting comment in the prosecutor's summation; (3) his persistent felony offender adjudication violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (4) the evidence presented to the grand jury was legally insufficient; (5) his trial counsel provided ineffective assistance; (6) the trial court's failure to vacate the jury's verdict and replace it with a verdict of guilty for trespassing deprived him of due process of law; (7) the jury's alleged consideration of matters outside of evidence deprived him of due process; (8) the trial court's alleged failure to instruct the jury on the law concerning circumstantial evidence deprived him of due process; (9) he was deprived of a fair trial because the prosecutor allegedly vouched for the credibility of a government witness; (10) the prosecutor allegedly improperly disclosed Quan's alias to the jury, thus violating his due process rights and his privilege against self-incrimination; and (11) the cumulative effect of all of the alleged errors deprived him of a fair trial and due process.

4

Ten of Quan's eleven claims are in procedural default because Quan either failed to preserve the grounds for appeal or failed to even raise them on appeal. Quan does not show cause for the default or prejudice resulting therefrom. He also fails to show that a miscarriage of justice would result if I do not review his claims. In any event, these procedurally defaulted claims are without merit. The only claim that is not procedurally barred – that the evidence at trial failed to establish guilt beyond a reasonable doubt – is also without merit, as the trial court's decision to uphold the conviction is not contrary to or an unreasonable application of clearly established federal law.

## DISCUSSION

A. *The Standard of Review*

   1. <u>Procedural Default</u>

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed,* 489 U.S. 255, 261 (1989); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson,* 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not

reviewed. *Coleman,* 501 U.S. at 750; *Teague v. Lane,* 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Coleman,* 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier,* 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski,* 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *e.g.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

2. AEDPA Deference

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so

7

far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.  *Quan's Claims*

1.  The Sufficiency of the Evidence

Quan first contends that the prosecution failed to prove beyond a reasonable doubt the elements of second degree burglary because it did not adequately prove that Quan had broken and entered the Eladawy residence with the intent to commit a crime therein. N.Y. Penal Law § 140.25. The appellate court's conclusion that the prosecution established guilt beyond a reasonable doubt, *see People v. Quan,* 809 N.Y.S.2d 914 (2d Dep't 2006)*,* was not an unreasonable application of law.

A habeas petitioner "challenging the sufficiency of the evidence bears a very heavy burden." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks omitted). A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

8

307, 319 (1979). In making this assessment, a court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Thus, under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In this case, when the evidence is viewed in the light most favorable to the People, it is clear that a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Quan, who was acquitted of the petit larceny charge despite his conviction of burglary, argues that if reasonable doubt existed as to the former charge it necessarily existed as to the latter. Since the same evidence that supported the burglary conviction would have also supported a petit larceny conviction, the conviction on one count, but not the other undermines the burglary conviction. But this argument finds no support in federal law. It is possible "that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *United States v. Powell*, 469 U.S. 57, 65 (1984). Thus, the Supreme Court has rejected,

> as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

*Id.* at 66.

In Quan's case, the prosecution presented sufficient evidence for a rational trier of fact to find him guilty of second degree burglary. Specifically, the jury could have found that Quan had unlawfully entered the Eladawy residence without their permission with the intent to commit a crime therein. The entire apartment was ransacked, and a laptop computer and some jewelry were missing. The fact that Quan was acquitted of the petit larceny charge does not alter the availability of these facts to sustain a conviction for second degree burglary. At the very least, the state court's affirmance of the burglary based on this record was not an unreasonable application under *Jackson v. Virginia.*

2. Prosecutorial Misconduct

As noted above, the Appellate Division held that Quan's claim that he was deprived of a fair trial due to prosecutorial misconduct was unpreserved for appellate review. Quan has not shown cause for the default nor prejudice resulting from the prosecutor's alleged misconduct, nor has he shown that a miscarriage of justice would result if the prosecutorial misconduct claim were not reviewed.

Even if I were permitted to examine the prosecutorial misconduct claim, I would reject it. Habeas relief based on a claim of prosecutorial misconduct during summation is unavailable unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Pimentel v. Walsh*, No. 02 Civ. 570, 2003 U.S. Dist. LEXIS 19677, at *19-*20 (S.D.N.Y. Nov. 4, 2003) ("To obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show that 'the prosecutor engaged in egregious misconduct . . . amounting to a denial of constitutional due process.'" (ellipsis in original) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353

(2d Cir. 1991))). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Id.*

Quan argues that the prosecutor improperly shifted the burden of proof during his summation when the prosecutor commented that there was no evidence to support Quan's contention that his prints were on the box because he might have touched the box at the store six years prior. The trial judge overruled defense counsel's objection, and correctly concluded that such a statement does not shift the burden. Trial Tr. 308-09. There is an important difference between an argument that seeks to place a burden of proof on a criminal defendant and one that points out the absence of evidence supporting a specific factual assertion the defendant has advanced, particularly where, as here, that assertion may be proved through sources of evidence other than the defendant's own testimony.[1]

Second, Quan contends that the prosecutor attempted to appeal to the emotions of the jury when he said, "You are talking about a residential neighborhood, a husband and wife live there. Thank God that they weren't there when he tried to get in. Who knows what would have happened." Trial Tr. 331. Defense counsel objected to and the trial court properly

---

[1] If there was anything objectionable about the prosecutor's argument, it is that he made it even though the argument it sought to rebut had been successfully objected to. When defense counsel suggested that Quan could have handled the box in a Staples store years earlier, the prosecutor objected, and those objections were sustained. *See* Trial Tr. 308, 309. Thus, strictly speaking, there was no defense argument to rebut. But each trial has its own dynamic, and here moments after the trial court indicated there was no evidence to support it, defense counsel persisted in once again making his "Staples" argument. *Id.* In those circumstances, and despite the fact that the second attempt was successfully objected to as well, I fully understand why the trial judge would permit as "fair comment" the prosecutor's argument that there was no evidence that Quan purchased anything at Staples. *Id*. at 328.

sustained counsel's objection. No curative instruction was requested, presumably because none was deemed necessary. In any event, the trial court having informed the jury (by sustaining the objection) of the inappropriateness of the comment, the comment hardly rises to the level of constitutional error. Finally, Quan argues that the prosecutor was testifying for his cause when he inferred that Quan's prints appeared long after the Eladawys had purchased the plastic box: "Him and his wife they clean off things like any person does. You use common sense. His prints aren't there because it's cleaned regularly." Trial Tr. 330. The defense counsel failed to object to this statement. In any event, the prosecutor's argument was not an impermissible inference from the appearance of Quan's fingerprints on the plastic box six years after the Eladawys had purchased it. In sum, the challenged statements in the prosecutor's summation did not deprive Quan of a fair trial.

     3.     Quan's *Apprendi* Claim

Like the prosecutorial misconduct claim, Quan's claim that his sentence was unconstitutional under *Apprendi* is procedurally barred. *See People v. Quan,* 809 N.Y.S.2d 914 (App. Div. 2006) (rejecting the sentencing claim as unpreserved for appellate appeal). Again, Quan has not demonstrated cause for the default or resulting prejudice so as to exempt him from the finding of procedural default. Nor has he established that not considering the claim would result in a miscarriage of justice.

Even if I were to review the *Apprendi* claim de novo, without applying the deference that AEDPA requires upon review of a state court ruling on the merits, I would not grant habeas corpus relief on that ground.

In *Apprendi,* the Supreme Court struck down a New Jersey hate crime sentence enhancement statute, holding that the fact determination authorizing an increased maximum

sentence, *i.e.*, that the defendant had been motivated by racial discrimination, must be made by the jury, not the sentencing court. *See Apprendi,* 530 U.S. at 482-85, 492-97. However, the Court specifically held that the jury trial right does not apply to sentence enhancements based solely on prior convictions. *Id.* at 490 ("*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *see also Almendarez-Torres v. United States,* 523 U.S. 224, 239-47 (1998).

Quan argued on direct appeal that the sentencing court violated *Apprendi* when it found he had committed two prior violent felonies, making him subject to New York's persistent violent felony offender enhancement. However, an enhancement based on § 70.08 relies solely upon the court's finding of the qualifying prior convictions. The enhancement thus falls within the exception to the *Apprendi* rule. Unlike § 70.10, the discretionary persistent felony offender statute which raises Sixth Amendment concerns, *Portalatin v. Graham*, 478 F.Supp.2d 385, 387 (E.D.N.Y. 2007), § 70.08, the mandatory persistent felony offender statute does not implicate Quan's Sixth Amendment right to a jury determination. *Brown v. Greiner,* 409 F.3d 523, 535 (2d Cir. 2005). The sentencing court did not violate Quan's Sixth Amendment rights when it imposed an enhanced sentence pursuant to New York's mandatory persistent violent felony offender statute.

    4.    <u>Evidence Presented to Grand Jury was Legally Insufficient</u>

Quan's claim that the prosecutor presented insufficient evidence to the grand jury is likewise procedurally barred because Quan failed to raise the claim on appeal. Again, he has failed to demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would result if the grand jury sufficiency claim were not reviewed here.

In any event, this claim does not have any merit because claims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law. *See United States ex rel. Lloyd v. LaValle,* 304 F.Supp. 957, 958 (S.D.N.Y. 1964) (noting that there is no federal constitutional right that state court felony prosecutions be instituted by grand jury indictment). And even if there were an error, "[a]ny error in the grand jury proceeding connected with the charging decision [is] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70 (1986). Indeed, "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

5. <u>Ineffectiveness of Trial Counsel</u>

Quan's claim that he received ineffective assistance of trial counsel is procedurally barred because all of the claimed failings of counsel were discernable from the trial record yet Quan failed to raise these claims on direct appeal. He has failed to demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would result if the ineffective assistance of counsel claim were not reviewed here. Even if I were permitted to examine his ineffective assistance of counsel claims, I would reject them.

The Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it

> cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 124 S. Ct. 1, 4 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").

In assessing counsel's performance, I "must conduct an objective review . . . measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citations omitted) (quoting *Strickland*, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Quan argues that his attorney's performance was deficient because he failed to object to (1) the alleged deficiency and improprieties in the grand jury proceeding; (2) the instructions to the jury on the law related to circumstantial evidence; (3) the trial court's refusal to permit filing of a late notice of alibi; (4) improper vouching by the prosecutor; (5) an alleged change of theory of the prosecution after the verdict; (6) the court's failure to direct a verdict on a lesser included offense after the inconsistent verdict; and (7) the alleged jury consideration of matters not in evidence. Petitioner's Memorandum in Support of § 440 Motion ("Pet. § 440"), 10.

Quan has failed to demonstrate that his attorney provided deficient representation that resulted in prejudice to his case. The claimed errors he relies on – even if they were not procedurally barred – allege circumstances that did not actually happen or are not considered error.

The third and fifth grounds of his ineffective assistance of counsel claim were not raised as grounds for granting the instant petition. The third ground – that his counsel failed to object when the trial court refused to allow him to file a late notice of alibi – is not the result of inadequate lawyering on his counsel's part, but rather is merely a decision made by the trial court. The fifth ground for ineffective assistance of counsel – that the prosecution allegedly changed its theory after the verdict – seems to refer to the prosecutor's response to Quan's

counsel's post-verdict request that the jury resume deliberating based on counsel's assertion that the verdicts were repugnant. Trial Tr. 357-58. Even though the trial court ruled against counsel's request, it did so only after trial counsel had argued vigorously on Quan's behalf. Just because counsel did not prevail does not signify that counsel was ineffective. Quan's ineffective assistance of counsel claim is therefore without merit.

      6.      <u>Remaining Claims</u>

Quan's remaining five claims are procedurally barred and furthermore are without merit. He contends that (1) the trial judge erred by failing to substitute a conviction for trespassing in lieu of his burglary conviction; (2) the jury allegedly considered matters beyond the evidence; (3) the trial court allegedly failed to give an instruction on circumstantial evidence; (4) the prosecution improperly vouched for the credibility of its witness; and (5) the prosecutor improperly revealed Quan's alias to the jury. The § 440 court found all five claims to be procedurally barred because Quan had failed to raise them on direct appeal. N.Y. Crim. Proc. Law § 440.10(2)(b). And in accordance with the *Coleman* standard, in none of these instances has Quan shown cause for the default, prejudice therefrom, or that a miscarriage of justice would result if the claim were not reviewed.

In any event, each of these claims is without merit. Quan bases his contention that the trial judge erred by failing to substitute a conviction for trespassing for the burglary conviction on the incompatibility of the jury's verdicts. As discussed above in connection with Quan's sufficiency claim, under *Powell*, an inconsistent verdict is not an adequate basis for overturning or substituting a conviction. 469 U.S. at 66.

Quan's claim that the jury considered matters outside of the evidence is likewise undermined by *Powell*. Quan speculated that the jury, in finding him guilty of burglary but not

17

of petit larceny, might have believed that there was a second or third party to the crime. But an inconsistent verdict is not a substitute for evidence that the jury considered matters outside of the evidence. Quan does not allege specific facts that would support his contention, nor does he cite to the record. Accordingly, this claim has no merit.

Next, Quan contends that the trial court failed to properly instruct the jury on the law of circumstantial evidence. In fact, the trial court did explain the concept of circumstantial evidence, and the instructions were unobjectionable. Trial Tr. 344-45. Quan claims that the jury should have been told that in order to find him guilty beyond a reasonable doubt, the prosecution's proof had to "exclude every possible hypothesis of defendant's innocence." Pet. §440, 22. This is simply incorrect. *See, e.g.*, *United States v. Reich*, 479 F.3d 179, 190 (2d Cir. 2007).

Quan's bolstering claim is likewise without merit. In his brief, Quan fails to allege specific instances where the prosecutor vouched for his witness, but even so, a habeas claim based on improper vouching for a witness does not present a federal constitutional claim. *See Hodge v. Henderson*, 761 F. Supp. 993, 1008 (S.D.N.Y. 1990); *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y. 1995) ("The concept of bolstering really has no place as an issue in criminal jurisprudence based on the United States Constitution.").

Finally, Quan contends that the prosecutor improperly revealed petitioner's alias to the jury after the judge had barred the disclosure of the alias.[2] Pet. § 440, 25. But the judge explicitly permitted the association of the two names: The judge stated that the jury should regard "Victor Bernard and Victor Quan [as] the same person," and he instructed the jury not to "speculate as to anything else." Trial Tr. 282. Regardless of whether or not the judge allowed

---

[2] Quan fails to cite to the record, and I have not found such an instruction in the record. I assume for purposes of this decision that such an instruction was made at the *Sandoval* hearing.

the association, the name "Victor Bernard" arose in connection the fingerprint card, not in connection with a prior felony conviction. I therefore see in that testimony no prejudice of the sort that warrants habeas relief.

    7.    <u>Cumulative Effect Claim</u>

Quan contends that "the combined effect of all the errors herein complained of deprived him [of] a fair trial and due process." Pet. § 440, 27. Because Quan does not present a claim upon which habeas relief can be granted, there is no possible cumulative effect of errors that could implicate the fairness of the underlying conviction.

## CONCLUSION

For the foregoing reasons, the petition is denied. As Quan has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

    So ordered.


John Gleeson, U.S.D.J.

Dated:  Brooklyn, New York
        October 29, 2007